UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MARION SCHWARZ, individually, and
on behalf of other members of the public
similarly situated,

               Plaintiffs,

     v.

TRIWEST HEALTHCARE ALLIANCE
CORP., and DOES 1 through 100,
inclusive,

               Defendants.

No.  2: 20-cv-00312 KJM EFB

ORDER

       Plaintiff Marion Schwarz moves to remand this case to state court.  ECF No. 7.
Defendant Triwest Healthcare Alliance Corporation opposes the motion.  ECF No. 11.  This court
found the motion appropriate for decision without oral argument as authorized by Federal Rule of
Civil Procedure 78, and, for the following reasons, GRANTS it.

I.      INTRODUCTION

       On December 31, 2019, plaintiff filed a complaint on behalf of herself and those
similarly situated, in Sacramento County Superior Court, alleging eight separate violations of the
California Labor and Business and Professions Codes.  *See* Not. of Removal ("NOR"), Ex. A.,
ECF No. 1-1.

/////

1

On February 20, 2020 defendant filed a notice of removal as provided by the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).  NOR at 1, 4.  On March 11, 2020, plaintiff moved to remand, arguing that defendant "failed to prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional minimum."  Mot. for Remand ("MFR"), ECF No. 7, at 4.  Defendant has opposed, Opp'n, ECF No. 11, and plaintiff has replied, Reply, ECF No. 12.

II.      LEGAL STANDARD

Removal to federal court is authorized in "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."  28 U.S.C. § 1441(a).  CAFA grants original jurisdiction to federal district courts over civil cases where: (1) the amount in controversy exceeds $5 million, exclusive of interest and costs; (2) the aggregate number of proposed plaintiffs is 100 or greater; and (3) the parties are minimally diverse.  28 U.S.C. §§ 1332(d)(2), (d)(5)(B).  Generally, such a case is removable up to 30 days after the defendant "ascertain[s] that the action is removable under CAFA . . . ."  *Jordan v. Nationstar Mortgage LLC*, 781 F.3d 1178, 1180 (9th Cir. 2015).

CAFA was designed by Congress specifically to allow removal of certain class actions to federal court.  *Ibarra v. Manheim Investments, Inc.,* 775 F.3d 1193, 1197 (9th Cir. 2015).  Congress's specific intent means there "is no antiremoval presumption attend[ing] cases invoking CAFA . . . ."  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) (citing S. Rep. No. 109-14, at 43 (2005)), given that such a presumption would cut against "CAFA's primary objective: ensuring Federal court consideration of interstate cases of national importance."  *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595 (2013) (internal citation omitted).

Removal requires that the moving party carry "the burden of establishing removal."  *Abrego Abrego v. The Dow Chem. Co.,* 443 F.3d 676, 685 (9th Cir. 2006).  When, as here, plaintiff has not specified an amount in the complaint, this burden is satisfied vis-à-vis the amount-in-controversy requirement by a good-faith accounting of the amount in controversy.  *Owens*, 574 U.S. at 87–88 (analogizing requirement to that of plaintiff's upon alleging amount-in-

1    controversy in original complaint).  This number is only disturbed under the initial good-faith

2    standard if "contested by the plaintiff or questioned by the court."  *Id.*

3            If the amount in controversy is contested, "both sides submit proof and the court

4    decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has

5    been satisfied." *Ibarra*, 775 F.3d at 1197 (quoting *Owens*, 574 U.S. at 88); *see also* 28 U.S.C. §

6    1446(c)(2)(B).  The type of evidence to be submitted by the parties "includ[es] affidavits or

7    declarations, or other summary-judgement-type evidence," which prevents the establishment of

8    "removal jurisdiction by mere speculation and conjecture." *Id*.  The preponderance standard

9    requires that it be "more likely than not that amount in controversy exceeds [$5 million]" based

10   on the evidence submitted. *Sanchez v. Monumental Life Ins. Co.,* 102 F.3d 398, 404 (9th Cir.

11   1996) (internal quotation omitted).  Once the preponderance standard is triggered, if "the

12   evidence submitted by both sides is balanced, in equipoise, the scales tip against federal-court

13   jurisdiction." *Ibarra*, 775 F.3d at 1199.

14           Plaintiff is challenging removal on the exclusive basis that defendant has not

15   established the amount in controversy by a preponderance of the evidence.  MFR at 1, 4.  While

16   plaintiff specifically challenges defendant's failure to identify the amount in controversy in the

17   notice of removal, which is not required, the challenge still triggers the analysis described in

18   *Owens* and *Ibarra*, which the court performs below.  *Id*.; *Owens*, 574 U.S. at 88; *Ibarra*, 77F.3d

19   at 1197.

20   III.    <u>DISCUSSION</u>

21           Plaintiff's motion for remand is based solely on CAFA's amount-in-controversy

22   requirement.  Specifically, she argues defendant has not established estimates for meal and rest

23   period violations, overtime violations, waiting period violations, and attorney's fees by a

24   preponderance of the evidence. *See* MFR, at 6–12.  As provided in *Owens*, defendant has

25   submitted a single declaration from Roger Wolpert, defendant's Vice President and Controller,

26   with two attached spreadsheets in tabular form. *See* Wolpert Decl., ECF No. 11-1; *see also id*.,

27   Exs. A, B.  The first table, according to the declaration, details the total number of paychecks

28   issued to the putative class during the relevant period, Wolpert Decl., Ex. A, at 5–9, and the

3

1   second shows the total hours worked by employees, the number of employees who worked, and

2   the average hours each employee worked each day.  Wolpert Decl., Ex. B, at 11–34.  Based on

3   the declaration and exhibits, defendant estimates the amount in controversy to be $8,223,302.45.

4   Opp'n at 17.

5          The assumptions underlying defendant's claimed amount in controversy are based

6   on an average hourly wage of $18.44 for those still employed, and $18.43 for those previously

7   terminated.  Furthermore, defendant estimates the following: (1) one missed meal period per

8   week; (2) one missed rest period per week; (3) one missed hour of overtime per pay period; (4) a

9   100 percent violation rate of waiting period violations at the maximum rate; (5) $2 per pay check

10  for non-compliant wage statements and unreimbursed business expenses; (6) attorney's fees equal

11  to 25 percent of the aggregate amount previously listed.  Opp'n at 13–16.  Aside from attorney's

12  fees, each of defendant's assumptions explicitly depends on plaintiff's language in the complaint

13  alleging a "pattern and practice" of violations.  Opp'n at 19.

14         Plaintiff presents no rebuttal evidence but argues that defendant has not satisfied

15  the preponderance-of-the-evidence standard triggered by plaintiff's challenge to the defense

16  estimate.  MFR, at 7–8.  As explained above, defendant bears the burden of satisfying the

17  standard.  *Abrego Abrego*, 443 F.3d at 685; *see also Ibarra*, 775 F.3d at 1197.

18         The Ninth Circuit explicitly addressed the meaning of "pattern and practice"

19  language in this context in *Ibarra*.  There, the court held "that a pattern and practice of doing

20  something does not necessarily mean *always* doing something" and more specifically that a

21  "pattern and practice of labor law violations" does not mean it is "universally followed every time

22  the wage and hour violation could arise."  *Id*. at 1198–99 (emphasis in original) (internal

23  quotations omitted).

24         The question for the court is whether defendant's evidence, the language of the

25  complaint, or some combination of the two establishes, by a preponderance of the evidence, the

26  amount in controversy here is over $5,000,000.

27  /////

28  /////

4

1        A.     <u>Missed Meal and Rest Periods</u>

2        Defendant estimates plaintiff and all class members were deprived of one meal and

3 one rest period per week, or two each per pay period. Opp'n at 14. Defendant used the following

4 calculation to reach the claimed $1,615,270.24 in controversy for each and the combined

5 $3,230,540.48: "43,798 checks issued x $18.44 per hour x 2 additional hour unpaid wages per

6 check." *Id*. Defendant argues the Wolpert declaration and accompanying table, both of which

7 say average daily hours were over 6, demonstrate that every employee would have been entitled

8 to a meal period. According to defendant, its estimate is reasonable considering the average daily

9 hours, the average hourly wage of $18.44, and the "pattern and practice" language in the

10 complaint, which supports their estimate of two violations per pay period. *Id*.

11        While defendant has submitted tables indicating the average number of hours

12 worked by employees per day, this court need not decide if this evidence justifies defendant's

13 estimate of two missed meal/rest periods per pay period. As a foundational matter, defendant has

14 offered no evidence corroborating the claimed $18.44 average hourly wage of plaintiff and class

15 members. Mr. Wolpert's declaration, viewed alone, cannot be relied upon to establish the

16 average wage by a preponderance of the evidence. *See Garibay v. Archstone Communities LLC*,

17 539 Fed. App'x 763, 764 (9th Cir. 2013) ("[A] declaration by [defendant's] supervisor of payroll,

18 which sets forth only the number of employees during the relevant period, the number of pay

19 periods, and general information about hourly wages" was "speculative and self-serving" when

20 establishing an amount in controversy.); *see also Farley v. Dolgen California LLC*, No. 2:16-cv-

21 02501, 2017 WL 3406096, at *3 (E.D. Cal. 2017) (finding defendant failed to meet its burden

22 under CAFA by relying on Workforce Reporting Analyst's declaration regarding average salary

23 without providing any other corroborating evidence). Absent other support, the court cannot find

24 defendant has established, by a preponderance of the evidence, the average hourly wage rate of

25 $18.44. Because the defendant's estimate for meal and rest periods relies on defendant's average

26 wage estimate, the court will not consider it in determining the amount in controversy.

27 /////

28 /////

1          B.      Unpaid Overtime

2                  Defendant estimates one hour of unpaid overtime per pay period for each putative

3    class member.  According to the Wolpert declaration, defendant estimates it issued 43,798

4    paychecks in the relevant four-year time-period.  Opp'n at 13.  For this category, defendant's

5    calculation is "43,798 checks issued x ($18.44 per hour x 1.5) x 1 hour per check," which

6    provides the amount-in-controversy estimate of $1,211,452.68 for unpaid overtime.  Because this

7    estimate also relies on the defendant's claimed average salary, the analysis regarding meal and

8    rest periods is equally applicable here.  Given the lack of a proper evidentiary foundation for the

9    asserted average salary, the court also does not consider the calculation of missed overtime pay in

10   determining the amount in controversy.

11         C.      Waiting Period Violation

12                 Defendant estimates possible damages from plaintiff's waiting period claims to be

13   $2,049,052.80.  Opp'n, at 17.  In determining whether defendant's assumption of a 100 percent

14   violation rate at the maximum penalty is appropriate, the only relevant inquiry is whether the

15   language of the complaint justifies it, as defendant has offered no "summary-judgement-type"

16   evidence to support its assertion.  *Ibarra*, 775 F.3d. at 1197 (quoting *Owens*, 574 U.S. at 89).

17                 Defendant argues the language here is analogous to the "adopted and maintained

18   uniform policies, practices and procedures" language, which another district considered sufficient

19   support for a 100 percent rest period violation rate in *Mejia v. DHL Express (USA), Inc.,* No. CV

20   15-890-GHK, 2015 WL 2452755, at *4 (C.D. Cal., 2015) (the court found 100 percent rest period

21   violation rate reasonable, which, combined with allegation of willfulness, justified 100 percent

22   waiting period violation rate).  *Mejia* is inapposite.  The court in *Mejia* explicitly distinguished

23   the language in that case from the language in *Ibarra*.  *Mejia*, 2015 WL 2452755, at *4

24   (considered "adopted and maintained uniform policies, practices and procedures" to be materially

25   different than "pattern and practice" and that only the first justified a 100% violation rate).  The

26   language in this case is identical to the "pattern and practice" language in *Ibarra*, and so *Mejia* is

27   not helpful to the defense.  *See Ibarra*, 775 F.3d at 1198–99.  Additionally, in *Farley v. Dolgen*

28   *California LLC*, this court found that allegations of willfulness, absent other evidence, did not

1   justify an assumption that half of the discharged employees in that case were entitled to two-

2   thirds of the maximum penalty.  2017 WL 3406096, at *4.  As in *Farley*, defendant here is not

3   "entitled" based on the complaint's "unlimited language. . . to assume that plaintiffs intended to

4   include all putative members in the putative class, and that plaintiff would seek to recover all of

5   the waiting time penalties for each . . . class member."  *Id*.  The language in the complaint does

6   not support defendant's claimed 100 percent violation rate at the maximum statutory penalty.

7           The waiting time calculation also, like the others, relies on the $18.44 average

8   hourly wage derived exclusively from the Wolpert Declaration.  As noted above, without

9   corroboration, the "declaration is speculative and self-serving."  *Id*. at 3; *see also Carag v. Barnes*

10  *& Noble, Inc*., No. 2:15-cv-00115, 2015 WL 3706497, at *2, 5 (E.D. Cal. 2015) ("a defendant

11  cannot establish removal by mere speculation and conjecture, with unreasonable assumptions").

12          The limitations of the language in the complaint and defendant's failure to provide

13  evidentiary support for the $18.44 average hourly wage means defendant fails to carry its burden

14  on two fronts. Its estimate of waiting-period-violation damages will not be considered in

15  determining the amount in controversy.

16          D.     <u>Attorney's Fees</u>

17          The final disputed figure submitted by defendant is for attorney's fees, estimated at

18  $1,588,480.00, twenty-five percent of defendant's estimated judgment.  Opp'n at 17.

19          This court need not address whether the attorney's fees are properly included in

20  evaluating the jurisdictional amount at issue in the instant case.  Given the findings above, the

21  estimated judgment on which the proposed attorney's fees figure relies is not supported by

22  sufficient evidence.  Even assuming *arguendo* this court accepted the remaining estimates

23  submitted by defendant and incorporated the fees, the attorney's fees only amount to a total of

24  $109,495.

25          Defendant has not met its burden of demonstrating the amount in controversy

26  exceeds $5 million as required under CAFA.  Plaintiff's motion for remand is GRANTED.

27  /////

28  /////

7

IV.     CONCLUSION

        The motion is GRANTED.  This case is hereby REMANDED to the Sacramento County Superior Court for all further proceedings. This order resolves ECF No. 7.

        IT IS SO ORDERED.

DATED:  July 21, 2020.

_____
CHIEF UNITED STATES DISTRICT JUDGE